OBADIAH KIMBALL vs. WILLIAM H. COMSTOCK & another.

A fraudulent representation that a person is of good credit, whereby another is induced to sell him merchandise, although made in order to enable him to pay a debt due from him to the person making the representation, is within the statute of frauds, and will not support an action, unless in writing.

ACTION OF TORT against William H. Comstock and Dennis Eames. Trial in Essex at April term 1859, before *Bigelow*, J., resulting in a verdict for the defendants and a case reserved for the consideration of the whole court. The facts appear in the opinion.

*A. A. Abbott,* for the plaintiff, cited *Savile* v. *Roberts,* 1 Ld. Raym. 378; *Skinner* v. *Gunton,* 1 Saund. 230, note; *Bulkley* v. *Storer,* 2 Day, 531; *Sheple* v. *Page,* 12 Verm. 533; *Tappan* v. *Powers,* 2 Hall (N. Y.) 298; *Jones* v. *Baker,* 7 Cow. 448; *Patten* v. *Gurney,* 17 Mass. 185; *Livermore* v. *Herschell,* 3 Pick. 36; *Parker* v. *Huntington,* 2 Gray, 124; 2 Smith's Lead. Cas. (5th Amer. ed.) 176; 2 Greenl. Ev. § 228; *Medbury* v. *Watson,* 6 Met. 246; *Alger* v. *Scoville,* 1 Gray, 397.

*S. H Phillips & A. B. Underwood,* for the defendants, cited *St.* 9 G. 4, *c.* 14, § 6; Rev. Sts. *c.* 74, § 3; *Lyde* v. *Barnard,* 1 M. & W. 101; *Haslock* v. *Fergusson,* 7 Ad. & El. 86; *Swann* v. *Phillips,* 8 Ad. & El. 457; *Devaux* v. *Steinkeller,* 6 Bing. N. C. 84; *Medbury* v. *Watson,* 6 Met. 259; Browne on St. of Frauds, § 181.

MERRICK, J. The declaration alleged in substance that Eames, one of the defendants, being indebted to Comstock, the other defendant, they combined and confederated with each other to defraud the plaintiff of property of which Eames was in open possession, and thereupon transfer it to Comstock in payment of the debt due to him; that in pursuance of this conspiracy Eames applied to the plaintiff to purchase a large amount of stock to be thereafterwards manufactured into boots and shoes; and that Comstock, well knowing Eames not to be entitled to credit, falsely and fraudulently represented to the plaintiff that he was possessed of a large amount of property

and entitled to credit; that the plaintiff, relying solely upon these representations, and having no personal knowledge of his pecuniary condition, sold to Eames the property which he had applied to him to purchase, upon credit; that the money due upon the purchase had never been paid; that Eames was wholly unable to pay the debt created by the sale; and that by means of these transactions the plaintiff had lost and been defrauded of his property. The answer of Comstock denied for himself all the material allegations in the declaration, or that he made any statements or representations to the plaintiff, concerning the credit or pecuniary responsibility of Eames, which he knew or had any reason to believe to be untrue; or that the plaintiff had any cause of action whatever against him.

It appears that upon the trial the plaintiff did not attempt, or wholly failed, to prove any agreement or conspiracy between Eames and Comstock concerning the matters complained of; but attempted to maintain his action solely upon the ground of the alleged false representations of Comstock, and the consequent loss by a sale of property to Eames. And he asked the court to instruct the jury, that even though there was no agreement between those parties, yet if Comstock fraudulently made false representations concerning the credit and pecuniary ability of Eames, for the purpose of getting payment of Eames's debt to him by means of property obtained through such fraud, and actually, by means of the property thus obtained, accomplished such fraudulent purpose, he was responsible for any injury sustained by the plaintiff through such fraudulent representations. None of the alleged representations being shown to have been in writing, the court declined to give the instructions proposed by the plaintiff, and to this refusal the plaintiff excepted.

The question which arises upon the bill of exceptions is, whether the instructions prayed for should have been given; or in other words whether an action can be maintained by the plaintiff to recover compensation for any loss which he may have sustained by reason or in consequence of any verbal representation concerning the pecuniary responsibility of Eames, if shown to have been falsely and fraudulently made.

43*

By § 3 of *c.* 74 of the Rev. Sts. it is provided that no action shall be brought to charge any person upon or by reason of any representation or assurance made concerning the character, con duct, credit, ability, trade or dealings of any other person, unless such representation or assurance be made in writing, and signed by the party to be charged thereby, or by those persons by him thereto lawfully authorized.

It is contended by the plaintiff that the provisions of the stat ute are applicable only to cases where the intent and purpose of the party making the representation is to enable a third person to obtain credit, goods or money by means of it. This certainly is a correct statement of the law; for although upon first impression it might seem to have a more comprehensive signifi- cation, it has been repeatedly determined that this limitation results from a just interpretation of the language of the statute. *Medbury* v. *Watson,* 6 Met. 246. *Norton* v. *Huxley,* 13 Gray, 285. But the plaintiff is in no situation to avail himself of this limitation, because the declaration expressly avers that the object of the defendant, in recommending Eames as a man of property and of good pecuniary standing, was that he should obtain credit thereby, and that the plaintiff should be induced to sell and deliver property to him upon his own responsibility.

Any other object or purpose, wholly distinct from an intent to enable a third person to obtain money, goods or credit, of the party who makes representations concerning the character, con- duct or credit of another, cannot be considered as of any import- ance, since the statute expressly declares that no action shall be brought to charge any person by reason of such representation, unless it be made in writing, and signed by him or by some person duly authorized thereto in his behalf. This rule being made peremptory and absolute by the statute, the motive of the party making verbal representations upon these subjects is wholly immaterial, in reference to anything except such intent, and therefore there could be no propriety in instituting any inquiry concerning it.

This results from the construction which has been put upon the statute; and no reference or allusion has been made to

cases in which any further limitation than that above mentioned has been held, or been supposed necessarily to result from any construction which could properly be given to its provisions. It is substantially a copy of the English statute known as Lord Tenterden's Act, the interpretation of which in the courts there is in accordance with the views here expressed in reference to our own. *Haslock* v. *Fergusson*, 7 Ad. & El. 86, and 2 Nev. & P. 269. Its provisions, interpreted as being subject to the limitation above mentioned, are simple and direct, and afford little occasion for diversity of opinion. He who means to rely upon such representations as are referred to in the statute, respecting the character, credit or responsibility of another, as a ground of maintaining an action to recover compensation in case of loss, if they should prove to be false, must take care that they are reduced to writing and signed by the party ultimately to be charged ; for without such evidence he will fail to attain his object.

As this action cannot, for the reasons stated, be maintained, it is unnecessary to consider whether the evidence offered by the plaintiff was properly rejected. It could have had no effect, if received, upon the principal question in the case, upon which the opinion of the court ·is decisive against the right of the plaintiff to recover. *Judgment on the verdict.*